UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RORY DOLAN,                                          :

                       Plaintiff,                    :  13 Civ. 5726 (GBD) (GWG)

            -v.-                                 :  REPORT AND RECOMMENDATION

WILLIAM J. CONNOLLY, et al.,                         :

                 Defendants.                    :
----------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      This action was brought by prisoner Rory Dolan, currently an inmate at the Marcy

Correctional Facility in New York State, against five prison officials: Superintendent William J.

Connolly, Superintendent David A. Stallone, Superintendent Roger Maines, Lieutenant M.

Callender, and Senior Correction Counselor Carl Good.  Dolan alleges that the defendants

retaliated against him for exercising his First Amendment rights.  See First Amended Complaint,

filed Apr. 20, 2016 (Docket # 59) ("Am. Compl."), ¶¶ 91-98.  He also asserts causes of action

for violations of his Eighth and Fourteenth Amendment rights.  Id. ¶¶ 99-110.  The defendants

have moved to dismiss the complaint against them for failure to state a claim upon which relief

may be granted.  For the reasons stated below, the motion should be granted in part and denied in

part.

I. BACKGROUND

      For purposes of deciding defendants' motion to dismiss, the Court assumes the

allegations in the complaint are true and draws all reasonable inferences from those facts in

Dolan's favor.  See, e.g., Littlejohn v. City of New York, 795 F.3d 297, 306 (2d Cir. 2015)

(citing Ofori-Tenkorang v. Am. Int'l Grp., 460 F.3d 296, 300 (2d Cir. 2006)).

A.  Facts

The allegations of his complaint relate to Dolan's experiences at the Fishkill Correctional Facility to which he was transferred in 2008.  Am. Compl. ¶¶ 6, 16.  During his two decades in prison, and while at Fishkill, Dolan acted as a "jailhouse lawyer," helping other inmates research and file legal matters, including civil claims, criminal appeals, and prison grievances.  See id. ¶¶ 14-18; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, filed July 1, 2016 (Docket # 69) ("Pl. Mem."), at 1.  To perform his work at Fishkill, Dolan signed a "law clerk employment agreement and a computer registration agreement," which provided rules and procedures for his use of the law library's computers.  Id. ¶ 19.

On August 1, 2009, Dolan was elected to serve on Fishkill's Inmate Liaison Committee ("ILC"), a group that acted as an intermediary between the prisoner population and prison officials to discuss issues important to the general welfare of the facility's prisoners.  See id. ¶¶ 20-21.  In his capacity as a representative on the ILC, Dolan "vigorously criticized the policies and conditions within Fishkill, as well as the Correctional Facility's leadership."  Id. ¶ 22.  Dolan also served on the Commissary Subcommittee, dealing with issues related to the goods sold in the prison commissary.  Id. ¶¶ 23-25.  One of the defendants, Carl Good, the Senior Correction Counselor at Fishkill, attended most of the commissary meetings in his role as Acting Deputy Superintendent of Programs.  Id. ¶¶ 11, 25.

Dolan was reelected to the ILC on February 1, 2010, and served again on the Commissary Subcommittee, in addition to acting as the Main Building Representative — a position that allowed Dolan to consult with all housing unit representatives regarding the conditions of the prison's main building.  Id. ¶¶ 27-29.

2

Through his work as the Main Building Representative, Dolan discovered in May 2010 what he believed was misappropriation by prison staff of funds meant for prisoner recreation. Id. ¶ 30.  Dolan brought these allegations, as well as proof of his claims, to the attention of Good and William J. Connolly, Fishkill's Superintendent.  Id. ¶¶ 7, 30-32.  Approximately one hour after raising the issue with Good and Connolly, Dolan's computer in the law library was searched, at Good's direction.  See id. ¶¶ 33-34.  Only Dolan's computer was searched.  Id. ¶ 34.

On July 31, 2010, Dolan was "unanimously reelected to serve a third term" on the ILC. Id. ¶¶ 35-36.  Connolly, however, prevented Dolan from serving his third elected term, even though there was no limit on the number of terms a prisoner may serve on the ILC.  Id. ¶¶ 37-38. Dolan was again elected to serve in January 2011.  Id. ¶ 39.  He was also elected to serve as the ILC's chairman on January 20, 2011.  Id. ¶¶ 40-42.  On January 24, 2011, approximately four days after Dolan was elected chairman and a week before his term was scheduled to begin, Good searched Dolan's assigned room in the law library.  Id. ¶¶ 42-43.  Good "did not search any other Law Library room."  Id. ¶ 44.  After the search, Good confiscated Dolan's computer and three floppy discs because the items contained "password protected files."  Id. ¶¶ 45-46.

Dolan used passwords to protect the private information of the prisoners he was helping in the law library.  Id. ¶ 47.  Despite previous opportunities to discover the password-protected nature of Dolan's law library files, Good had never reprimanded Dolan for using passwords to protect his legal files until after Dolan was elected ILC chairman.  See id. ¶¶ 48-50.  Two days after confiscating Dolan's law library materials, on January 26, 2011, Good "authored a memorandum prohibiting the use of passwords on law clerk[s'] personal computers."  Id. ¶ 52. There had never been such a prohibition prior to Good's search of Dolan's computer on January 24.  See id. ¶¶ 54-55.  On the evening of January 26 — the day that Good authored the new

3

password memo — Dolan "was removed from the law library and taken directly to Fishkill's Special Housing Unit ("SHU") pending a Tier III Hearing."  See id. ¶ 56.[1]

Dolan was "falsely charged" with failing to obey "all orders of department personnel promptly and without argument" and with providing legal assistance to another inmate without appropriate institutional approval.  See id. ¶ 57.  From May 2005 until this incident, Dolan never had a Tier II or Tier III offense on his record.  Id. ¶ 60.  Dolan's Tier III hearing began on February 8, 2011.  Id. ¶ 62.  Roger Maines, Fishkill's Plant Superintendent, presided over the Tier III hearing despite not having formal training to do so.  Id. ¶¶ 9, 62-64.  Dolan's law library supervisor, Correctional Officer Quigley, testified that "all of the information contained on [Dolan's] computer was authorized and that [Dolan] did not disobey a direct order."  Id. ¶ 65.  At the end of the hearing, on February 15, 2011, Dolan was found guilty of disobeying a direct order, despite the testimony of M. Callender, a Lieutenant at Fishkill, who testified that the disobeyed order was "never actually stated, but instead implied."  Id. ¶¶ 10, 66-68.  Dolan was sentenced to 90 days in SHU for disobeying an order.  Id. ¶ 69.  Dolan appealed the hearing's

---

[1]  The various "tiers" of hearings in the New York State prison system were explained in Criscolo v. Vagianelis, 12 N.Y.3d 92, 93-94 (2009):

> Inmates incarcerated in prisons operated by the New York State Department of Correctional Services (DOCS) must comply with standards of conduct (7 NYCRR part 270), which are enforced through issuance of inmate misbehavior reports in those instances where a rule violation endangers life, health, security or property (7 NYCRR 251-3.1).  These reports are subject to review at an administrative hearing at which a hearing officer determines the truth of the allegations and imposes penalties accordingly.  There are three levels of administrative hearings — tier I (violation hearing), tier II (disciplinary hearing) and tier III (superintendent's hearing) — with differing requirements for each (7 NYCRR 270.3; 7 NYCRR parts 252, 253, 254). . . .  Tier III hearings . . . address the most serious inmate misbehavior implicating the most severe punishment (7 NYCRR 251–2.2[b][3]) . . . .

determination the next day.  Id. ¶ 70. While Dolan was in SHU, Callender spoke to him and said

that the misbehavior report that formed the basis of the Tier III hearing "wasn't personal, it was

just business."  See id. ¶ 71.

On February 22, 2011, Connolly denied Dolan's request for discretionary review of the

Tier III hearing.  Id. ¶ 72.  On March 1, 2011, Dolan was transferred from Fishkill to the Cayuga

Correctional Facility, but remained in SHU.  Id. ¶ 73.  During March 2011, while at Cayuga,

Dolan twice requested that defendant David A. Stallone, Cayuga's Superintendent, review

Dolan's February Tier III hearing, and twice Stallone denied that request.  Id. ¶¶ 8, 74-77.

Notwithstanding these denials, the Department of Corrections and Community Supervision's

Director of Special Housing and Inmate Disciplinary Programs reversed Dolan's Tier III hearing

decision and ordered Stallone to immediately release Dolan from SHU.  Id. ¶¶ 78, 80.  The

Director also ordered the misbehavior report expunged from Dolan's record.  Id. ¶ 80.  Stallone

refused to release Dolan.  See id. ¶¶ 79, 81.  Dolan's stay in SHU ended only when his original

90-day sentence expired.  See id. ¶¶ 78-82.  Dolan left SHU on April 26, 2011.  Id. ¶ 82.

During the time Dolan was in SHU, he lost the opportunity to work as law clerk, serve on

the ILC, and receive prison wages.  See id. ¶¶ 83, 85.  Dolan also alleges that he suffered loss of

liberty, "physiological" injuries, emotional injuries, and loss of residence in his preferred

correctional facility, which was Fishkill.  Id. ¶¶ 84, 86.

B.  Procedural History

Dolan filed his original complaint on August 13, 2013.  After defendants moved to

dismiss, the court dismissed the complaint for failure to state a claim upon which relief may be

granted.  See Dolan v. Connolly, 2014 WL 3057973, at *2 (S.D.N.Y. June 27, 2014), adopting

2014 WL 1876524 (S.D.N.Y. May 8, 2014).  On appeal, the United States Court of Appeals for

the Second Circuit reversed the dismissal of Dolan's retaliation claim, which he had brought pursuant to 42 U.S.C. § 1983.  See Dolan v. Connolly, 794 F.3d 290, 294-95 (2d Cir. 2015) ("Dolan").  In Dolan, the Second Circuit held that participation in an ILC grievance-type committee is protected conduct for First Amendment purposes.  Id.  The Second Circuit "reinstate[d Dolan's] Section 1983 claim and remand[ed] for the district court to reconsider, in light of [the appellate] decision, whether the complaint" could survive a motion to dismiss.  Id. at 295.  The Second Circuit also directed that this Court allow Dolan an opportunity to amend his complaint and that he be appointed counsel.  Id. at 295, 296-97.

After remand from the Second Circuit, the Court secured counsel for Dolan.  Dolan filed his amended complaint, which we will refer to as the "complaint," and the instant motion followed.[2]

## II.  STANDARD FOR A MOTION TO DISMISS

A party may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the opposing party's pleading "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  While a court must accept as true all of the allegations contained in a complaint, that principle does not apply to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's

---

[2]  See Notice of Motion to Dismiss the Amended Complaint, filed May 31, 2016 (Docket # 62); Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, filed May 31, 2016 (Docket # 63) ("Defs. Mem."); Declaration of Christina Okereke, filed May 31, 2016 (Docket # 64); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, filed June 30, 2016 (Docket # 67) (Pl. Mem.); Letter from Keith Szczepanski, filed July 1, 2016 (Docket # 68); Pl. Mem.; Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint, filed July 22, 2016 (Docket # 73) ("Defs. Reply"); Reply Declaration of Christina Okereke, filed July 22, 2016 (Docket # 74) ("Okereke Reply Decl."); Letter from Christina Okereke, filed July 22, 2016 (Docket # 75).

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

(citation, internal quotation marks, and brackets omitted).  In other words, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice,"

Iqbal, 556 U.S. at 678 (citation omitted), and thus a court's first task is to disregard any

conclusory statements in a complaint, see id. at 679.

     Next, a court must determine if a complaint contains "sufficient factual matter" which, if

accepted as true, states a claim that is "plausible on its face."  Id. at 678 (citation and internal

quotation marks omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117,

121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the

conclusion that the defendant violated the law, but which actively and plausibly suggest that

conclusion.") (citations omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable for
> the misconduct alleged.  The plausibility standard is not akin to a probability
> requirement, but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.

Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).  "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely

"alleged — but . . . not show[n] — that the pleader is entitled to relief."  Id. at 679 (second

alteration in original) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

     While a court typically examines only the allegations in the pleading on a motion to

dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are

deemed part of the pleading and may be considered."  Roth v. Jennings, 489 F.3d 499, 509 (2d

Cir. 2007) (citation omitted).  Additionally, matters of public record integral to a complaint may

be considered to determine "what statements [they] contained — but . . . not for the truth of the

matters asserted."  Id. (alteration in original) (citations, emphasis, and internal quotation marks

omitted).

III.  DISCUSSION

We discuss each of Dolan's claims next.  While defendants raised exhaustion of remedies

as a basis for their motion to dismiss in their initial brief, see Defs. Mem. at 9-11, they make

clear in their reply brief that they are not seeking to have the exhaustion issue adjudicated as part

of the motion to dismiss, see Defs. Reply at 1 n.1.  Accordingly, we do not address this defense.

A.  Retaliation Claims

1.  Governing Law

To state a claim for First Amendment retaliation, an inmate must show three separate

elements: "(1) that the speech or conduct at issue was protected, (2) that the defendant took

adverse action against the plaintiff, and (3) that there was a causal connection between the

protected speech and the adverse action."  Dolan, 794 F.3d at 294 (internal quotation marks

omitted) (quoting Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009)).  As Dolan makes clear,

the first element is established here.  Id. at 295 ("voicing grievances on behalf of a prison

population as a member of an inmate grievance body, such as the ILC" is protected conduct)

(citing Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996)).

In the prison context, an "adverse action" must be such "that would deter a similarly

situated [inmate] of ordinary firmness from exercising . . . constitutional rights."  Gill v.

Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004) (quoting Davis v. Goord, 320 F.3d 346, 353 (2d

Cir. 2003)).  Thus, in prison cases, courts use an objective standard to determine whether a

8

defendant's conduct would be enough to deter inmates in general from exercising protected rights, even if a particular inmate was not himself deterred.  See id.   The Second Circuit has held that filing a false misbehavior report to place an inmate in "keeplock" — an equivalent of the SHU, see McGowan v. Schuck, 2016 WL 4611249, at *3 n.5 (W.D.N.Y. Sept. 6, 2016) — is an adverse action "that would deter a prisoner of ordinary firmness from vindicating his . . . constitutional rights through the grievance process."  See Gill, 389 F.3d at 384.

To establish a causal connection between the defendant's adverse action and the plaintiff's harm, "[a] plaintiff must allege facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (second alteration in original) (internal quotation marks omitted) (quoting Smith v. Christopher, 2008 WL 4283519, at *10 (N.D.N.Y. Sept. 16, 2008)).  A plaintiff may rely on circumstantial facts to establish retaliatory motive, including "(I) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation."  Moore v. Cajigas, 2013 WL 4734829, at *6 (S.D.N.Y. Aug. 20, 2013) (quoting Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002)).

Finally, to show an individual defendant's liability for a § 1983 claim, a plaintiff must establish that the defendant was personally involved in the alleged constitutional violation. Grullon v. City of New Haven, 720 F.3d 133, 138-39 (2d Cir. 2013) (collecting cases).  For supervisors, personal involvement may not be established through the doctrine of respondeat superior.  See Hernandez v. Keane, 341 F.3d 137, 144-45 (2d Cir. 2003) (citations omitted); accord Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004)

9

("An individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation.") (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)).  A plaintiff may show the involvement of a supervisor if

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference [to the rights of inmates] by failing to act on information indicating that unconstitutional acts were occurring.

See Littlejohn, 795 F.3d at 314 (quoting Back, 365 F.3d at 127); accord Wilkins v. Poole, 706 F. Supp. 2d 314, 318 (W.D.N.Y. 2010) (citations omitted).

> 2.  Analysis

Apart from raising the doctrine of qualified immunity, discussed in section III.B below, defendants do not move to dismiss the retaliation claims against Maines and Callender.  See generally Defs. Mem. at 13-18.  For his part, Dolan does not oppose defendants' motion to the extent it argues that he has not stated a claim against Stallone.  See generally Pl. Mem. at 17-22. Accordingly, we address only the claims against Connolly and Good.  See generally Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 222 n.9 (2d Cir. 2014) (plaintiff abandoned certain claims in part because he failed to "oppos[e] the motion to dismiss on [those] issue[s]") (citing Lore v. City of Syracuse, 670 F.3d 127, 149 (2d Cir. 2012)); Rivera v. Balter Sales Co., 2014 WL 6784384, at *3 (S.D.N.Y. Dec. 1, 2014) ("[F]ailure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.") (collecting cases).

As to the claims against Connolly and Good, the first element of the retaliation analysis

10

is met inasmuch as participation in an inmate grievance committee is protected activity under the First Amendment.  Dolan, 794 F.3d at 295.  Additionally, defendants have not argued that there was a lack of causation between the protected conduct and any of the alleged acts of retaliation.  Accordingly, we examine only the second element of the retaliation inquiry: that is, whether any of the acts constituted an "adverse action."  Additionally, we consider whether the defendant at issue was "personally involved" in committing the alleged adverse action.

### a. Defendant Good

The complaint is unclear as to which of the various allegations involving actions by Good constitute adverse actions against Dolan for which Dolan seeks to hold Good responsible.  Dolan's memorandum of law, however, identifies the actions as: "creating a policy that prohibit[ed] the use of passwords on computers and floppy discs without providing Mr. Dolan with a reasonable opportunity to comply with the newly enacted directive."  Pl. Mem. at 20.  It also refers to Good's search and confiscation of the computer used by Dolan in the law library.  Id.  It concludes by stating that "[d]efendant Good took the adverse action of creating a directive that was used only against Mr. Dolan and prevented him from performing his duly elected activities as an ILC representative."  Id. at 21.[3]

While defendants argued in their moving brief that the issuance of the password policy and the search did not constitute an adverse action, Defs. Mem. at 15-16, Dolan provided no case law in opposition.  In fact, case law reflects that a search of a prisoner's property does not constitute "adverse action" in light of the realities of prison life.  See, e.g., Mateo v. Alexander,

---

[3]  Dolan's memorandum asserts that Good "punished" Dolan for using password-protected files.  Pl. Mem. at 20.  But the allegations of the complaint cited in support of his statement, Am. Compl. ¶¶ 49, 54-55, do not refer to any "punishment" other than the issuance of the memorandum restricting the use of passwords.

2012 WL 864805, at *4 (S.D.N.Y. Mar. 14, 2012) (citing cases). Additionally, it is obvious that merely prohibiting the use of passwords on a prison computer would not deter an inmate "of ordinary firmness from exercising . . . constitutional rights." Gill, 389 F.3d at 381 (omission in original) (internal quotation marks omitted) (quoting Davis, 320 F.3d at 353).

In arguing that Good committed an adverse action in setting the password policy, Dolan notes that another defendant, Callender, "relied" on the policy instituted by Good to initiate the disciplinary process against Dolan. Pl. Mem. at 20-21. But this constitutes an assertion that Callender committed an adverse action, not that Good did so. The acts that Good allegedly committed do not constitute adverse actions merely because another officer used those acts to actually act adversely against Dolan. See generally Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986) ("The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing.") (citation omitted); Muhammad v. Pico, 2003 WL 21792158, at *16-17 (S.D.N.Y. Aug. 5, 2003) (filing of an allegedly false report did not personally involve the sergeant who filed it in the due process violations alleged because "'but for causation' . . . is not the standard for Section 1983 liability") (citations omitted). Accordingly, the complaint fails to state a claim of retaliation against Good.

### b. Defendant Connolly

Dolan's memorandum of law asserts that Connolly retaliated against Dolan by "twice prohibiting him from serving his duly elected terms as ILC representative for the 17/19 Housing Unit, prohibit[ing] him from serving as Fishkill's ILC chairman, and transferring him from his preferred correctional facility." Pl. Mem. at 17.[4] Mentioned in passing are two other alleged

_____

[4] Essentially identical retaliatory acts are identified in a subsequent paragraph:

retaliatory acts: that Connolly approved Good's memorandum prohibiting password-protected files and that he "upheld the disciplinary report and Tier III hearing decision against Mr. Dolan." Pl. Mem. at 19.  While the memorandum of law does not discuss it, it cites to a paragraph of the complaint in which Dolan alleges that "Defendant MAINES opened Plaintiff's Tier III hearing on the order of Defendant CONNOLLY."  Am. Compl. ¶ 62.  Thus, we will assume that Dolan is alleging that Connolly ordered Dolan to be disciplined for violating the password-protection policy.

As to the transfer allegation, the complaint does not identify any defendant as having undertaken this action.  See Am. Compl. ¶¶ 73, 84.  Accordingly, Connolly cannot be held personally responsible for it.  The claim that Connolly approved the Good memorandum prohibiting password-protected files fails because, for the reasons already discussed, the Good memorandum did not constitute an adverse action.

The claim that Connolly ordered Maines to institute the Tier III disciplinary action is sufficient to show an adverse action given that the charge was allegedly without basis.  See Am. Compl. ¶ 54 (alleging that there had been no previous ban on password-protected files); id. ¶ 55 (alleging that the forms permitting Dolan to use the computer mentioned no such ban); id. ¶ 65 (alleging that the correction officer supervising the library testified at the hearing that Dolan did not disobey a direct order).  It is settled that the filing of a false misbehavior report constitutes adverse action.  See, e.g., Gill, 389 F.3d at 384.

---

Second, as a result of Mr. Dolan's conduct on the ILC, Defendant Connolly took adverse action against him by prohibiting him from serving his duly elected terms as representative of the 17/19 housing unit, as well as the ILC's Chairman, and ultimately transferring him from Fishkill.  Am. Compl. ¶ 37; 73; 83.

Pl. Mem. at 17.

Similarly, the assertion that Connolly upheld the disciplinary decision, Am. Compl. ¶ 72, is sufficient to show personal involvement in an adverse action. Dolan appealed to Connolly to review Maines' determination. See id. ¶ 70. Connolly declined to reverse the determination, however. See id. ¶ 72. The allegations of the complaint are subject to the reasonable inference that Connolly knew that the basis for the disciplinary violation against Dolan was lacking. Moreover, whatever appeal process Dolan started was eventually successful in that his Tier III verdict was overturned and ordered expunged from his record. See id. ¶ 78. While defendants assert that the complaint is not sufficiently specific as to the "contents of his discretionary appeal to defendant Connolly," Defs. Mem. at 18; accord Defs. Reply at 3, the only case they cite in support of this contention, Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), arose following summary judgment and thus does not speak to the level of detail that is required in a complaint. Here, the factual allegations of the complaint are sufficient to show that Connolly, "after being informed of the violation through a report or appeal, failed to remedy the wrong." See Littlejohn, 795 F.3d at 314 (quoting Back, 365 F.3d at 127).

As to the allegation regarding Dolan being prevented from serving a third term on the committee, defendants offer a document purporting to show that the Department of Correctional Services allows inmates to serve only two successive terms as ILC representative. Okereke Reply Decl., Exhibit A. On a motion to dismiss, however, it would be inappropriate to consider such a document inasmuch as it is outside the pleadings. See generally Roth, 489 F.3d at 509. This is especially true since the document was inexplicably submitted for the first time in defendants' reply brief and thus Dolan was not given a chance to address it. Defendants make no other argument that being prevented from serving on the ILC does not rise to the level of an "adverse action." Accordingly, this claim for retaliation also stands.

14

B.  Qualified Immunity

Defendants raise the doctrine of qualified immunity.  Defs. Mem. at 22-29; Defs. Reply at 9-15.  Accordingly, we address that question with respect to the retaliation claims that remain in this case — that is the claims against Maines, Callender, and Connolly.  Maines is alleged to have "opened" and presided over Dolan's Tier III hearing.  Am. Compl. ¶¶ 62-64.  Callender is alleged to have instituted the false misbehavior report.  See id. ¶¶ 61, 71.  Thus, the retaliation claims against Maines and Callender parallel the claim against Connolly regarding the alleged false disciplinary report.

1.  Governing Law

A government official is entitled to immunity from suit, or "qualified immunity,"

> (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was "objective[ly] legal[ly] reasonable[ ] . . . in light of the legal rules that were clearly established at the time it was taken."

Manganiello v. City of New York, 612 F.3d 149, 164 (2d Cir. 2010) (alterations and omission in original) (citations omitted) (quoting Munafo v. Metro. Transp. Auth., 285 F.3d 201, 210 (2d Cir. 2002)).  An "official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations in original) (internal quotation marks omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The Second Circuit has held "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was

15

unlawful.'" <u>Luna v. Pico</u>, 356 F.3d 481, 490 (2d Cir. 2004) (alterations in original) (quoting

<u>Anderson v. Recore</u>, 317 F.3d 194, 197 (2d Cir. 2003)).  "The question is not what a lawyer

would learn or intuit from researching case law, but what a reasonable person in [the]

defendant's position should know about the constitutionality of the conduct." <u>Abrams v. Dep't</u>

<u>of Pub. Safety</u>, 764 F.3d 244, 255 (2d Cir. 2014) (alteration in original) (internal quotation marks

omitted) (quoting <u>Young v. County of Fulton</u>, 160 F.3d 899, 903 (2d Cir. 1998)); <u>accord</u> <u>Luna</u>,

356 F.3d at 490 (quoting <u>McCullough v. Wyandanch Union Free Sch. Dist.</u>, 187 F.3d 272, 278

(2d Cir. 1999); and citing <u>Anderson</u>, 483 U.S. at 640).

Even if there is not a case directly on point saying particular conduct is prohibited, a

court may "nonetheless treat the law as clearly established if decisions from [the Second Circuit]

or other circuits clearly foreshadow a particular ruling on the issue." <u>Terebesi v. Torreso</u>, 764

F.3d 217, 231 (2d Cir. 2014) (internal quotation marks omitted) (quoting <u>Scott v. Fischer</u>, 616

F.3d 100, 105 (2d Cir. 2010)).[5]  The degree to which such foreshadowing must occur has been

articulated by the Supreme Court in recent decisions.  Thus, in <u>White v. Pauly</u>, 2017 WL 69170

(U.S. Jan. 9, 2017), the Court emphasized:

> "'[E]xisting precedent must have placed the statutory or constitutional question
> beyond debate.'" [<u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015)].  In other words,
> immunity protects "'all but the plainly incompetent or those who knowingly
> violate the law.'" <u>Ibid</u>. . . . "[C]learly established law" should not be defined "at a
> high level of generality." <u>Ashcroft v. al-Kidd,</u> 563 U.S. 731, 742, 131 S. Ct.
> 2074, 179 L.Ed.2d 1149 (2011).  As this Court explained decades ago, the clearly
> established law must be "particularized" to the facts of the case. <u>Anderson v.
> Creighton,</u> 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987).

---

[5]  We reject defendants' argument that <u>Taylor v. Barkes</u>, 135 S. Ct. 2042 (2015),
"indicate[s] that only Supreme Court precedent, not circuit precedent, can establish clearly
established law for qualified immunity purposes."  Defs. Reply at 12.  The passage defendants
cite from <u>Taylor</u>, 135 S. Ct. at 2044, does not support defendants' argument.  And to our
knowledge the Supreme Court has never so held.

Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  Id., at 639, 107 S. Ct. 3034.

Id. at *4.

Qualified immunity may be raised on a motion to dismiss.  See, e.g., McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  To prevail on a qualified immunity defense at the motion to dismiss stage, however, the facts supporting qualified immunity "must . . . appear on the face of the complaint," and it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Id. (citations and internal quotation marks omitted).

       2.  Analysis

We note that Dolan's allegations of misappropriation of prison funds in or about May 2010, Am. Compl. ¶¶ 30-32, have not been shown to be linked to an adverse action because these complaints were followed only by a search of Dolan's "office and computer," id. ¶¶ 33-34. As discussed in section III.A.2.a above, such a search is not an "adverse action" for purposes of the retaliation analysis.  Rather, the adverse action here is, most prominently, the filing and upholding of the false disciplinary charges — a course of events that was allegedly triggered by Dolan's service on and re-election to the ILC.  See id. ¶¶ 39-56.  The complaint contains an allegation that Dolan criticized prison policies and conditions in his capacity as an ILC representative.  Id. ¶ 22.

Defendants argue that, for purposes of the qualified immunity doctrine, it was not clearly established until Dolan that "retaliation against a prisoner for filing or voicing grievances on behalf of a prison population as a member of an inmate grievance body, such as the ILC, violates the right to petition government for the redress of grievances guaranteed by the First and

17

Fourteenth Amendments."  794 F.3d at 295 (citation and internal quotation marks omitted).

Defendants correctly point out that Dolan declined to address the question of whether the right

was "clearly established."  Id. at 295 n.2.

 While it is a close question, we conclude that the right was in fact clearly established at

the time the events alleged in the complaint took place.  As Dolan points out, id. at 294-95, case

law makes clear that a prisoner's pursuit of a grievance constitutes protected First Amendment

activity, see, e.g., Gill, 389 F.3d at 384 ("[Plaintiff] has sufficiently alleged . . . participation in

protected activity: the use of the prison grievance system . . . ."); Franco v. Kelly, 854 F.2d 584,

589 (2d Cir. 1988) (prisoner complaints implicate the "broader right to petition government for

redress of grievances, as guaranteed by the First and Fourteenth Amendments") (citations

omitted).  Further, as the Second Circuit has noted, the right to petition government for redress

of grievances — in both judicial and administrative forums — has been held to be "among the

most precious of the liberties safeguarded by the Bill of Rights."  Graham, 89 F.3d at 80

(internal quotation marks omitted) (quoting United Mine Workers of Am., Dist. 12 v. Ill. State

Bar Ass'n, 389 U.S. 217, 222 (1967)).

 Dolan noted that "Dolan's alleged actions as an ILC representative are similar, if not

identical, to the grievance-related activity already established as constitutionally protected

conduct."  794 F.3d at 295 (citing Graham, 89 F.3d at 79-80; and Franco, 854 F.2d at 589).  In

support of this statement, Dolan pointed in part to Graham, in which the Second Circuit held that

an inmate's efforts to file a grievance and "attempt to find inmates to represent the grievants" in

response to a request by members of an inmate grievance committee was constitutionally

protected.  Graham, 89 F.3d at 80.  A number of district court decisions have reached the same

conclusion.  See Webster v. Fischer, 694 F. Supp. 2d 163, 183 (N.D.N.Y.) ("The right of an ILC

18

member to voice criticisms regarding prison conditions is . . . a clearly established constitutional right.") (citation omitted), aff'd, 398 F. App'x 683 (2d Cir. 2010); Ayers v. Roberts, 2008 WL 2079921, at *6 (W.D.N.Y. May 15, 2008) (finding that accepting and forwarding complaints for investigation as an ILC chairperson constituted protected activity); Shaheen v. Filion, 2006 WL 2792739, at *3 (N.D.N.Y. Sept. 17, 2006) ("[Plaintiff's] complaints to prison officials in his capacity as the chairman of the ILC were clearly assertions of his constitutional rights protected by the First Amendment.") (citation omitted); Gill v. Riddick, 2005 WL 755745, at *8-10 (N.D.N.Y. Mar. 31, 2005) ("[W]e find that prisoners have a constitutional right to serve as a grievance committee representative.").

Defendants point to two district court opinions that they contend show that such a right was "not even clear to . . . judges" and that therefore the right could not be determined "with reasonable certainty." Defs. Reply at 13. The cases, however, do not support the argument. The first case cited is the previous decision in this case. The original complaint in this case, however, was not clear that Dolan's membership and advocacy as a member of the ILC was the conduct that precipitated the defendants' retaliation. Thus, the decision did not hold that there was no possibility that Dolan could show protected activity in his role as an ILC member, but instead focused on the fact that the allegations in the original complaint regarding his activities were made in the most "conclusory and imprecise terms." See Dolan v. Connolly, 2014 WL 1876524, at * 9 (S.D.N.Y. May 8, 2014), adopted by 2014 WL 3057973 (S.D.N.Y. June 27, 2014). The complaint has now been amended and defendants do not suggest that there is anything conclusory about the amended complaint's description of Dolan's protected activities. The other case cited, Tolliver v. Skinner, 2013 WL 658079 (S.D.N.Y. Feb. 11, 2013), rests on a similar footing. In Tolliver, the court apparently accepted defendants' argument that "the

19

plaintiff did not allege that he engaged in a protected activity or <u>specify either the substance of his work or the role of the defendants in connection with that committee</u>."  <u>See</u> <u>id.</u> at *6, *21 (emphasis added).[6]

Defendants briefly argue that even if the right to petition the prison system as a member of a prison grievance committee was clearly established, it was reasonable for the defendants to act the way they did.  Defs. Reply at 14; <u>see also</u> <u>Taravella v. Town of Wolcott</u>, 599 F.3d 129, 134 (2d Cir. 2010) (citation omitted).  But if, as we have concluded, the First Amendment right to advocate as part of the ILC was clearly established, defendants have not explained why it would have been "reasonable" for defendants to retaliate against the plaintiff for exercising that right.

Accordingly, the allegations of the complaint do not show that defendants are entitled to qualified immunity.

C.  <u>Eighth Amendment Claim</u>

The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994).  To establish that his Eighth Amendment rights were violated, a plaintiff must show "(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal

---

[6]  Defendants emphasize that <u>Dolan</u> stated it was "now" holding that filing or voicing grievances as a member of an ILC was protected conduct and that it had not "specifically" so held previously.  <u>See</u> Defs. Reply at 10 (citing <u>Dolan</u>, 794 F.3d at 294, 295).  We do not view these statements as speaking to the issue of qualified immunity, however, given that <u>Dolan</u> disclaimed any ruling on the question.  794 F.3d at 295 n.2.  Additionally, as already discussed, there is no requirement that there be a "specific" ruling on a set of factual circumstances for a right to be "clearly established."

civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official." Gonzalez v. Hasty, 802 F.3d 212, 224 (2d Cir. 2015) (internal quotation marks omitted) (quoting Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)); accord Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citations omitted). Thus, the plaintiff must show objectively serious conditions suffered by the plaintiff and a subjective knowledge on the part of the defendant. See Gonzalez, 802 F.3d at 224.

"To meet the objective element, [an] inmate must show that the conditions [of confinement], either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); and Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam)).

The basis for Dolan's Eighth Amendment claim is not clear from the complaint, inasmuch as the allegations specific to that claim, Am. Compl. ¶¶ 100-104, do not specify the nature of the Eighth Amendment deprivation, other than to assess the motives of the defendants in effectuating the disciplinary process. In his memorandum of law, Dolan identifies his Eighth Amendment claim as being based on his "prolonged, unlawful confinement in the Special Housing Unit." Pl. Mem. at 22 (capitalization omitted). His memorandum asserts that Dolan was in "solitary confinement," though this allegation appears nowhere in the complaint. His memorandum of law also cites to various studies that are also not referenced in the complaint. Id. at 23-24. Indeed, the complaint contains no description of Dolan's conditions of confinement.

To establish an Eighth Amendment claim based on prison conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. See

21

Farmer, 511 U.S. at 834.  Here, the complaint fails to allege any of the conditions of confinement, let alone conditions meeting this standard.  Thus, the Eighth Amendment claim fails for this reason alone.  In any event,"[i]t is established law in this Circuit that confinement in a SHU, without more, does not constitute a violation under the Eighth Amendment."  Miller v. Bradley, 2010 WL 3810001, at *4 (N.D.N.Y. Aug. 6, 2010) (citations omitted).  Accordingly, the Eighth Amendment claim must be dismissed.

     D.  Fourteenth Amendment Claim

     To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must plausibly allege "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted).

     The portion of Dolan's complaint specifying the violation of his Fourteenth Amendment rights is seemingly grounded only on the claim that an unqualified hearing officer, Maines, presided over his hearing and that Connolly assigned that officer.  Am. Compl. ¶¶ 105-110.  The complaint is clear that the claim is against Maines and Connolly only.  See id. ¶ 108.  Defendants explained the infirmities in this claim in their memorandum seeking dismissal.  See Defs. Mem. at 21-22.  Dolan's memorandum of law addressing the Fourteenth Amendment claim, however, does not even address the allegations against Maines and Connolly, let alone defendants' arguments.  See Pl. Mem. at 22-26.  The only claims discussed in Dolan's memorandum grounded in the Fourteenth Amendment are (1) that Dolan's SHU confinement itself violated the Fourteenth Amendment, Pl. Mem. at 22-25, and (2) that his being held for 12 days after he was ordered released constitutes a violation of "substantive due process," Pl. Mem. at 26.  We thus deem Dolan to have abandoned the claim in the complaint regarding Maines being unqualified.

22

See, e.g., Rivera, 2014 WL 6784384, at *3 ("[F]ailure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.") (collecting cases).

On the first claim as articulated in the memorandum of law, prisoners subject to disciplinary proceedings have a "liberty interest" only when "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"  Luna, 356 F.3d at 487 n.3 (omission in original) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  Factors considered in determining whether an inmate endured an "atypical hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement."  Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (citation and internal quotation marks omitted).  As Dolan himself recognizes, Pl. Mem. at 24, "restrictive confinements of less that 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual," Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (per curiam) (citing Colon v. Howard, 215 F.3d 227, 231-32 & n.5 (2d Cir. 2000)).  Similarly, Palmer noted that "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical."  Id. at 65 (collecting cases).  Here, the confinement was less than 101 days, see Am. Compl. ¶¶ 56, 69, 82, and there are no allegations at all regarding the conditions under which Dolan was kept. Thus, Dolan's claim fails the "liberty interest" aspect of the Fourteenth Amendment due process analysis.

As to the second claim, the only individual identified as having been responsible for

keeping Dolan in the SHU 12 days longer than was ordered is Stallone.  Id. ¶¶ 78-82.  But, as

noted, the complaint is clear that it is only making a Fourteenth Amendment claim against

"Connolly and Maines."  Id. ¶ 108 (capitalization omitted).  Moreover, the complaint is clear in

alleging a claim only of "procedural due process," id. — not substantive due process as argued

in Dolan's memorandum of law, Pl. Mem. at 25.  We thus do not construe the complaint as

making the claim argued in the memorandum of law and there is no need to address it further.  In

any event, any substantive due process claim would fail on the merits inasmuch as a confinement

for even 28 days beyond an administrative release date has been held not to rise to the level of a

substantive due process violation.  See Smith v. Fischer, 2009 WL 632890, at *10 (N.D.N.Y.

Feb. 2, 2009).  Here the extra confinement period was 12 days.  Am. Compl. ¶¶ 78-82.

        In sum, defendants' motion to dismiss the Fourteenth Amendment claim should be

granted.[7]

IV.  CONCLUSION

        For the foregoing reasons, defendants' motion to dismiss (Docket # 62) should be granted

in part and denied in part.

---

        [7] 42 U.S.C. § 1997e(e) provides that a prisoner may not bring an action based on "mental
or emotional injury suffered while in custody without a prior showing of physical injury."  See
42 U.S.C. § 1997e(e); Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002) ("[P]laintiff cannot
recover damages for mental or emotional injury for a constitutional violation in the absence of a
showing of actual physical injury.").  Defendants seek to dismiss Dolan's claims for
psychological and emotional injury on the ground that no claims are made of physical injury in
the complaint. Defs. Mem. at 29.  Dolan has not opposed this aspect of defendant's motion and
the statutory language is clear.  Accordingly, any claims for damages based on mental or
emotional injury would have to be dismissed.  See, e.g., Rosado v. Herard, 2014 WL 1303513, at
*12-13 (S.D.N.Y. Mar. 25, 2014) ("To the extent that [plaintiff] seeks compensatory damages
for mental or emotional harm, that claim will be dismissed, given [plaintiff's] failure to allege
physical injury.").

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. George B. Daniels at 500 Pearl Street, New York, New York

10007.  Any request for an extension of time to file objections must be directed to Judge Daniels.

If a party fails to file timely objections, that party will not be permitted to raise any objections to

this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner

& Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84,

92 (2d Cir. 2010).


Dated: January 18, 2017
         New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge